IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CARLOTTA M. B.,

                         Plaintiff,

        v.                                              Civil Action No.
                                                        5:17-CV-1367 (DEP)

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,


                         Defendant.

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFF:

OLINSKY LAW GROUP                      HOWARD D. OLINSKY, ESQ.
300 S. State Street                    ANDREW A. FLEMMING, ESQ.
Suite 420
Syracuse, NY 13202

FOR DEFENDANT:

HON. GRANT C. JAQUITH                  ARIELLA R. ZOLTAN, ESQ.
U.S. Attorney for the                  Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Acting Commissioner, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral argument was conducted in connection with those motions on September 6, 2018, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

(1)    Plaintiff's motion for judgment on the pleadings is GRANTED.

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

(2)    The Acting Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

(3)    The matter is hereby REMANDED to the Acting Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

(4)    The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:    September 11, 2018
          Syracuse, NY

3

1

```
 1   UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF NEW YORK
 2   -------------------------------------------------x
     CARLOTTA B.,
 3                                          Plaintiff,

 4       -v-                                5:17-CV-1367

 5   NANCY A. BERRYHILL,
     Acting Commissioner of Social Security,
 6
                                            Defendant.
 7   -------------------------------------------------x

 8                   TRANSCRIPT OF PROCEEDINGS
 9           BEFORE THE HONORABLE DAVID E. PEEBLES
                    September 6, 2018
10          100 South Clinton Street, Syracuse, New York

11

12   For the Plaintiff:

13      OLINSKY LAW GROUP
        300 South State Street
14      Suite 420
        Syracuse, New York 13202
15      BY:  ANDREW AUSTIN FLEMMING, ESQ.

16   For the Defendant:

17      SOCIAL SECURITY ADMINISTRATION
        26 Federal Plaza
18      Room 3904
        New York, New York 10278
19      BY:  ARIELLA R. ZOLTAN, ESQ.

20

21

22

23                   Hannah F. Cavanaugh
              Official United States Court Reporter
24                 100 South Clinton Street
               Syracuse, New York 13261-7367
25                     (315) 234-8545
```

1      (In chambers, counsel present by telephone.  Time noted:

2    2:19 p.m.)

3          THE COURT:  I have before me a request for judicial

4    review of an adverse determination by the Acting Commissioner

5    pursuant to 42, United States Code, Sections 405(g) and

6    1383(c)(3).

7          The background is as follows:  The plaintiff was born

8    in July of 1976.  She is currently 42 years old, was 37 at the

9    time she applied for benefits.  Plaintiff is divorced.  She

10   lives in Syracuse in a second floor apartment with her fiancé.

11   She has three grown children and two grandchildren, but

12   testified that she has minimal contact really with her children.

13         Plaintiff has an 8th grade education and was in

14   special education courses while in school.  According to page

15   243, she left due to her pregnancy, but did obtain a GED some

16   years later.  Plaintiff is right-hand dominant, weighs

17   225 pounds, and stands 5'5" in height.  Plaintiff does have a

18   driver's license.

19         Plaintiff has had several traumatic events that have

20   caused or contributed to significant mental impairments.  She

21   was raped at either 12 or 13 either by a babysitter or while

22   babysitting, it's somewhat unclear from the record.  Pages 243,

23   663, and 678 describe that.  She was also robbed at gunpoint

24   either three or four times, including in 2006.  She has been

25   abused by prior husbands and reportedly her son tried to murder

 1   her in 2009.  That's at page 274 of the Administrative

 2   Transcript.

 3          Plaintiff has had some brief periods of casual

 4   employment.  She was a sales associate at various times in 1999

 5   and in 2013.  She was a cab driver for six months in 2013.  She

 6   was a housekeeper in 2012 and 2013 in some sort of seasonal

 7   situation.  She was also a crew member and a cashier at various

 8   times from 1992 to 2007.  That is at 75 and 667 of the

 9   Administrative Transcript.

10          Medically, plaintiff does not have any significant

11   limitations as opined by one of her treating sources, Dr.

12   Dibble.  That's at 1031.  She does have a history of abscesses

13   and lesions, back and knee pain, GERD, COPD, tachycardia,

14   obesity, syncope, asthma, and migraines.  Her more serious

15   conditions, frankly, are mental.  She's been diagnosed in

16   various terms, including as having posttraumatic stress

17   disorder, a schizoaffective disorder of bipolar type,

18   generalized anxiety disorder, depressive disorder, cannabis use

19   disorder, benzodiazepine dependence.  Her symptoms include

20   crying, hearing voices, hallucinating.  She's had several

21   suicide attempts and paranoia.

22          Her primary physician, as I indicated, is Dr. William

23   Dibble.  She has also seen Dr. David Roemer since at least April

24   of 2015, according to 678 to 679 of the record, and Tina

25   Oguntunde at CNY Services in Dr. Roemer's office.  She has also

1    seen Dr. Bruce Silverstein back in November 2012.

2             Plaintiff has had some hospitalizations.  She was

3    briefly admitted to CPEP and she's been admitted to Crouse

4    Hospital.  She sees a counsellor weekly and Dr. Roemer two times

5    per month.  She has had emergency room treatment for overdose

6    attempts, including in May of 2014.  In July of 2014, she sought

7    treatment at Hutchings Psychiatric Center.  She has, at one time

8    at least, been attributed a GAF score, or Global Assessment of

9    Functioning score, of 55 and it was described that her condition

10   was worsening.  That's at page 274.

11            Medically, she has been prescribed Risperidone,

12   Xanax, Zoloft, Seroquel, Risperdal, Depakote, Trazodone, also

13   Oxybutynin, Flexeril, Nexium, Albuterol, and Zofran.  That's at

14   666, 668, and 258 of the Administrative Transcript.  Plaintiff

15   is a frequent user of marijuana and smokes approximately one

16   pack of cigarettes daily.  She reports side effects from her

17   medications, including nausea and vomiting.

18            In terms of daily activities, those are reported in

19   her hearing testimony and also at page 260 in Dr. Caldwell's

20   reports to include cooking, cleaning, watching television,

21   playing computer games.  She is able to bathe and dress.  She

22   does not take public transportation.  Her fiancé's mother does

23   her laundry for her.  She reports that she has two friends.

24            In terms of background, plaintiff applied for

25   Supplemental Security Income or SSI benefits on June 14, 2014,

1   alleging an onset disability date of September 3, 2013.  A

2   hearing was conducted by Administrative Law Judge David Begley

3   on June 16, 2016.  ALJ Begley issued a decision on December 2,

4   2016, that was unfavorable to the plaintiff.  That became a

5   final determination of the agency on October 24, 2017, when the

6   Social Security Administration Appeals Council denied

7   plaintiff's request for review of that decision.

8           In his decision, ALJ Begley applied the familiar five

9   step sequential test for determining disability.  He found at

10  step one that plaintiff had not engaged in substantial gainful

11  activity since the date of her application.

12          At step two, he concluded that plaintiff suffers from

13  severe impairments, including psychiatric disorders,

14  alternatively diagnosed as schizoaffective disorder, bipolar

15  disorder, posttraumatic stress disorder, borderline personality

16  disorder, and generalized anxiety disorder with panic, cannabis

17  dependence, and benzodiazepine dependence.

18          At step three, he concluded, however, that

19  plaintiff's conditions did not meet or medically equal any of

20  the listed presumptively disabling conditions set forth in the

21  Commissioner's regulations, specifically considering listings

22  12.03, 12.04, 12.06, 12.08, and 12.09.  He applied -- examined

23  the B and C criteria associated with those listings, finding

24  plaintiff suffered only mild limitations in the domain of the

25  daily living, moderate limitations in social functioning, and

1    moderate limitations in concentration, persistence, and pace

2    with no extended episodes of decompensation.  For the reasons

3    set forth in his decision, I won't elaborate, but he found that

4    the C criteria also was not met with respect to those listings.

5            After surveying the record, the ALJ concluded

6    plaintiff has the residual functional capacity, or RFC, to

7    perform a full range of work at all exertional levels with some

8    limitations.  They are limitations associated with concentrated

9    exposure to irritants.  Significantly, she is limited to simple

10   routine and repetitive tasks and to low stress jobs defined as

11   jobs with no fixed production quotas.  She can tolerate no

12   hazardous conditions, no more than occasional changes in the

13   work setting, and no more than occasional decisionmaking.  She's

14   limited to jobs requiring no more than occasional interaction

15   with co-workers and supervisors, no tandem tasks, and no direct

16   interactions with the public.

17           At step four, applying that RFC, the ALJ concluded

18   plaintiff is not cable of performing her past relevant work.  He

19   actually found that she did not have any prior experience that

20   would qualify as past relevant work.

21           At step five, based on the testimony of a vocational

22   expert, the Administrative Law Judge concluded that plaintiff

23   could, consistent with her RFC, perform the functions required

24   as a hand packager, a price marker, and an eyeglass frame

25   polisher and, therefore, that she was not disabled at the

 1   relevant times.

 2           As you know, my task is limited.  The scope of review

 3   is demanding.  I must determine whether correct legal principles

 4   were applied and that the determination is supported by

 5   substantial evidence.

 6           Of concern in this case is the treatment of Dr.

 7   Roemer's opinions, which are clearly inconsistent with the

 8   residual functional capacity determination.  In this case, Dr.

 9   Roemer's opinion, the opinion completed by Tina Oguntunde but

10   signed by David Roemer as supervising physician, is extremely

11   limiting and finds that plaintiff is unable to meet competitive

12   standards in most -- with the exception of three categories set

13   out in the form.  It also concludes that she would be off task

14   more than 20 percent of the time and absent about four days per

15   month.  I don't think there's any controversy that either of

16   those would be inconsistent with gainful employment.

17           The opinion of a treating physician concerning the

18   nature and severity of an impairment is entitled to considerable

19   deference if it is supported by medically acceptable clinical

20   and laboratory diagnostic techniques and is not inconsistent

21   with other substantial evidence.  If the ALJ does not afford

22   controlling weight to a treating source's opinion, he or she

23   must apply several factors to determine the degree of weight

24   that should be assigned to the opinion.  Those factors are

25   listed in 20 CFR Section 416.927, and include the length of the

1    treatment relationship, the frequency of examination, the nature

2    and extent of the treatment relationship, the evidence

3    supporting the treatment provider's opinion, the degree of

4    consistency between the opinion and the record as a whole,

5    whether the opinion is given by a specialist, and other evidence

6    that is brought to the attention of the ALJ.

7               In this case, the ALJ's opinion does not provide a

8    rationale for overlooking and discounting the opinions of Dr.

9    Roemer that would permit the Court to make a meaningful

10   assessment of whether these factors were, in fact, considered.

11   It's unquestioned that plaintiff was seeing Dr. Roemer and

12   people in Dr. Roemer's office for a year prior to the

13   preparation of this form.  The sole basis to discount the

14   signature of Dr. Roemer on the form subscribing to its contents

15   was that it's unclear to what extent Dr. Roemer actually

16   personally examined the claimant before signing Ms. Oguntunde's

17   opinion.  Dr. Roemer's a specialist, clearly had considerable

18   experience directly examining the plaintiff and, of course, had

19   access to Ms. Oguntunde's records, as well, so I don't find that

20   the ALJ properly discounted the opinions of Dr. Roemer and

21   outlined his analysis of how much weight should be accorded to

22   that limiting opinion.

23              The opinions of Dr. Roemer, to some extent, and

24   certainly with regard to 20 percent off task, is supported by

25   Dr. Dibble, another examining treating source.  The contrary

1   evidence really is limited to Dr. Caldwell.  And Dr. Caldwell's

2   opinions, in my view, are equivocal and that second paragraph of

3   the medical source portion of that opinion at 261 could be

4   viewed as supporting Dr. Roemer's opinions.  And of course, both

5   Dr. Blackwell, who was a non-examining source and therefore

6   cannot provide substantial evidence for an RFC, and certainly as

7   an non-examining source, is entitled to less deference than as a

8   treating source, Dr. Roemer would be -- again, Dr. Blackwell

9   didn't have access to many of Dr. Roemer's records and his

10  opinions were given in 2014.

11          So in my view, this case is very different and

12  distinguishable from cases like *Camille v. Colvin*, for example,

13  that was reported at 652 F. App'x 25, the case relied upon by

14  the Commissioner.  In that case, the opinions of the treating

15  source were in conflict with the content of the doctor's own

16  notes and the opinion of another doctor.  Moreover, the check

17  the box forms completed by the doctor requested narrative

18  explanation of any opined limitation particulars that the doctor

19  or the treating source declined to provide.  Further, the ALJ

20  specifically noted that the record of psychiatric treatment of

21  the plaintiff in that case was intermittent and included a

22  six-month gap between the first and second appointments with the

23  treating source.

24          I think this presents a very different situation.  I

25  don't think there's any question that this plaintiff may or may

1  not be disabled within the meaning of the Social Security Act

2  and I don't find persuasive evidence that she is, but I think

3  the matter should be remanded for a closer look because she

4  clearly does have significant psychiatric and mental conditions

5  and limitations.  I agree with the plaintiff's counsel that

6  under Social Security Ruling 85-15, she would not be able to

7  perform at the unskilled work level if Dr. Roemer's opinions are

8  accorded weight.

9          Under the circumstances then, I will grant judgment

10  on the pleadings to the plaintiff, reverse the Commissioner's

11  determination, and remand the matter without a directed finding

12  of disability for further proceedings.  Thank you both for

13  excellent presentations.  I hope you have a good afternoon.

14          MR. FLEMMING:  Thank you, your Honor.

15          MS. ZOLTAN:  Thank you.

16      (Time noted:  2:37 p.m.)

17

18

19

20

21

22

23

24

25

```
 1
 2                    CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5           I, HANNAH F. CAVANAUGH, Official Court Reporter, in and
 6   for the United States District Court for the Northern District
 7   of New York, DO HEREBY CERTIFY that pursuant to Section 753,
 8   Title 28, United States Code, that the foregoing is a true and
 9   correct transcript of the stenographically reported proceedings
10   held in the above-entitled matter and that the transcript page
11   format is in conformance with the regulations of the Judicial
12   Conference of the United States.
13
14           Dated this 10th day of September, 2018.
15
16           x_Hannah F. Cavanaugh_____
17             HANNAH F. CAVANAUGH
18             Official U.S. Court Reporter
19
20
21
22
23
24
25
```